Nicole Lavallee (SBN 165755)
Michael Dark (SBN 179083)
**BERMAN TABACCO**
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: nlavallee@bermantabacco.com
        mdark@bermantabacco.com

*Counsel for the Pension Fund Group*
*and Proposed Lead Counsel for the Class*

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| CHRIS PORCELLI, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> OUTSET MEDICAL, INC., LESLIE TRIGG, and NABEEL AHMED, <br><br> Defendants. | Case No. 5:24-cv-06124-EJD <br><br> **CLASS ACTION** <br><br> **PENSION FUND GROUP'S NOTICE OF MOTION AND MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:    December 19, 2024 <br> Time:    9:00 a.m. <br> Ctrm:    4 – 5th Floor <br> Judge:   Hon. Edward J. Davila |
| PLYMOUTH COUNTY RETIREMENT ASSOCIATION, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> OUTSET MEDICAL, INC., LESLIE TRIGG, REBECCA CHAMBERS, and NABEEL AHMED, <br><br> Defendants. | Case No. 5:24-cv-07267-HSG <br><br> CLASS ACTION <br><br> Ctrm:    2 – 4th Floor (Oakland Division) <br> Judge:   Hon. Haywood S. Gilliam, Jr. |

[NO. 5:24-cv-06124-EJD] PENSION FUND GROUP'S NOTICE OF MOTION AND MOTION FOR RELATION AND CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**TABLE OF CONTENTS**

**Page(s)**

NOTICE OF MOTION AND MOTION ..................................................................................1

STATEMENT OF THE ISSUES TO BE DECIDED.....................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................3

I.      SUMMARY OF THE ARGUMENT ................................................................................3

II.     SUMMARY OF THE FACTS ........................................................................................4

III.    ARGUMENT ................................................................................................................6

        A.      The Actions Should Be Consolidated for All Purposes.............................................6

        B.      The Pension Fund Group Is The "Most Adequate Plaintiff" And Should
                Be Appointed Lead Plaintiff ....................................................................................8

                1.      The Pension Fund Group Has Satisfied the PSLRA's Procedural
                        Requirements .................................................................................................9

                2.      The Pension Fund Group Has the Largest Financial Interest in the
                        Relief Sought by the Class................................................................................10

                3.      The Pension Fund Group Satisfies the Requirements of Rule 23..............10

                        a.      The Pension Fund Group's Claims are Typical of Those of
                                the Class ..........................................................................................11

                        b.      The Pension Fund Group Will Fairly and Adequately
                                Protect the Interests of the Class......................................................11

        C.      The Court Should Approve the Pension Fund Group's Selection of
                Counsel ....................................................................................................................13

IV.     CONCLUSION..........................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Berg v. Guthart*,
No. 5:14-CV-00515-EJD, 2014 WL 3749780 (N.D. Cal. July 30, 2014) ................................ 7

*Das v. Unity Software Inc.*,
No. 5:22-CV-03962-EJD, 2023 WL 1927739 (N.D. Cal. Feb. 10, 2023) ................................ 9

*Deinnocentis v. Dropbox, Inc.*,
No. 19-cv-06348, 2020 WL 264408 (N.D. Cal. Jan. 16, 2020) ................................ 10

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ................................ 11

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ................................ 8, 10, 13

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ................................ 4, 13

*Investors Research Co. v. U.S. Dist. Court for Cent. Dist. of Cal.*,
877 F.2d 777 (9th Cir. 1989) ................................ 7

*Leventhal v. Chegg, Inc.*,
No. 5:21-CV-09953-EJD, 2022 WL 4099454 (N.D. Cal. Sept. 7, 2022) ................................ 9

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.*,
No. 13-CV-05368-LHK, 2014 WL 2604991 (N.D. Cal. June 10, 2014) ................................ 3

*Mohanty v. BigBand Networks, Inc.*,
No. C 07-5101 SBA, 2008 WL 426250 (N.D. Cal. Feb. 14, 2008) ................................ 12

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ................................ 11

*Stephens v. Maplebear Inc.*,
No. 24-CV-00465-EJD, 2024 WL 3262617 (N.D. Cal. July 1, 2024) ................................ 9, 10, 11, 13

*Takeda v. Turbodyne Techs., Inc.*,
67 F. Supp. 2d 1129 (C.D. Cal. 1999) ................................ 8

*Welgus v. Trinet Grp., Inc.*,
No. 15-cv-03625-BLF, 2015 WL 7770222 (N.D. Cal. Dec. 3, 2015) ................................ 11

**STATUTES**

15 U.S.C. §78u-4(a)(1) ................................ 8

15 U.S.C. §78u-4(a)(3)(A)(i) ................................ 8, 9

15 U.S.C. §78u-4(a)(3)(A)(i)(II) ................................ 8

15 U.S.C. §78u-4(a)(3)(A)(ii) ............................................................................................................ 9

15 U.S.C. §78u-4(a)(3)(B) ........................................................................................................... 1, 8

15 U.S.C. §78u-4(a)(3)(B)(ii) ...................................................................................................... 3, 7

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) ............................................................................................ 3, 9, 10

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc) ............................................................................................ 10

15 U.S.C. §78u-4(a)(3)(B)(v) ....................................................................................................... 13

Exchange Act § 10(b) ................................................................................................................... 3, 7

Exchange Act § 20(a) .................................................................................................................... 3, 7

**OTHER AUTHORITIES**

H.R. Rep. No. 104-369 (1995) (Conf. Rep.), *as reprinted in* 1995 U.S.C.C.A.N. 730 ............... 13

S. Rep. No. 104-98 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 679 .......................................... 12

**RULES**

Civil L.R. 3-12 ................................................................................................................................ 1

Civil L.R. 3-12(a) ............................................................................................................................ 7

Fed. R. Civ. P. 23 .................................................................................................................. 3, 10, 13

Fed. R. Civ. P. 23(a) .................................................................................................................. 1, 11

Fed. R. Civ. P. 23(a)(4) ................................................................................................................. 11

Fed. R. Civ. P. 42 ............................................................................................................................ 3

Fed. R. Civ. P. 42(a) .................................................................................................................... 1, 7

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Please take notice that on December 19, 2024, at 9:00 a.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Edward J. Davila, in Courtroom 4, 5th Floor, United States Courthouse, 280 South 1st Street, San Jose, California 95113, Plymouth County Retirement Association ("Plymouth County") and Sheet Metal Workers' Pension Plan of Southern California, Arizona and Nevada ("SMW Pension Plan") (together, the "Pension Fund Group"), shall move this Court pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") for the entry of an Order:

(1) relating and consolidating the above-captioned actions and any related action that may be filed pursuant to Federal Rule of Civil Procedure 42(a) ("Rule 42") and Civil L.R. 3-12;

(2) appointing the Pension Fund Group as lead plaintiff; and

(3) approving the Pension Fund Group's selection of Berman Tabacco as lead counsel on behalf of the proposed Class (as defined herein).

This motion is made on the grounds that the above-captioned federal securities class actions brought in this district against Outset Medical, Inc. ("Outset" or the "Company") and other Defendants allege similar legal claims based on the same or similar factual allegations and should, therefore, be related and consolidated. Moreover, the Pension Fund Group has timely filed this motion and is the "most adequate plaintiff" pursuant to the PSLRA, *see* 15 U.S.C. §78u-4(a)(3)(B), based on its loss of approximately $1,034,933, which was suffered as a result of Defendants' wrongful conduct as alleged in the complaints. In addition, the Pension Fund Group meets the requirements of Federal Rule of Civil Procedure 23(a) because its claims are typical of other Class (defined *infra*) members' claims and it will fairly and adequately represent the Class. In addition, the Pension Fund Group has selected and retained counsel with substantial experience in prosecuting securities fraud class actions such as this one to serve as lead counsel for the Class.

The Pension Fund Group bases this Motion on this Notice of Motion and Memorandum of Points and Authorities, the Declaration of Nicole Lavallee in support thereof (the "Lavallee Declaration" or "Lavallee Decl.") and exhibits attached thereto, the Pension Fund Group's Joint Declaration in Support of Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel ("Joint Declaration") (which is attached as Exhibit 4 to the Lavallee Declaration) the pleadings and other filings herein, and such written and oral argument as may be presented to the Court.

### STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether the Court should relate and consolidate the two pending federal securities actions against Defendants, which involve common questions of law and fact.

2. Whether the Court should appoint the Pension Fund Group as lead plaintiff under the PSLRA.

3. Whether the Court should approve the Pension Fund Group's selection of Berman Tabacco as lead counsel for the proposed class.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    SUMMARY OF THE ARGUMENT

Presently pending in this district are two securities class actions (the "Actions") on behalf of persons and entities that purchased or otherwise acquired Outset securities between September 15, 2020 and August 7, 2024, inclusive (the "Class Period").[1]   The Actions charge Outset and certain of its current and former executives with violations of the Exchange Act.

As an initial matter, the Court must decide whether to consolidate the Actions. *See* 15 U.S.C. §78u-4(a)(3)(B)(ii).   The Court should consolidate the Actions because they present common issues of law and fact.   Moreover, consolidation will promote judicial efficiency and conserve the resources of the Court and the parties. *See* Fed. R. Civ. P. 42.   All of the Actions allege violations of Sections 10(b) and 20(a) of the Exchange Act and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder against the Company and several current and former executives.   As a result, Class members, including the Pension Fund Group, incurred significant losses from the same wrongdoing.

With respect to the appointment of a lead plaintiff to oversee the consolidated Actions, Congress established a presumption in the PSLRA that the most adequate plaintiff is the movant who demonstrates the "largest financial interest" in the litigation and who also has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

---

[1] The Class Period identified in the first-filed action, *Porcelli v. Outset, et al.*, No. 5:24-CV-06124-EJD (N.D. Cal), was August 1, 2022 and August 7, 2024.   The class period in the subsequent action *Plymouth County Ret. Assoc. v. Outset, et al.*, No. 5:24-cv-07267-HSG (N.D. Cal.) was expanded to September 15, 2020 through August 7, 2024.   For purposes of this motion, the Pension Fund Group's financial interest is presented under the longest-filed class period because "[f]or purposes of appointing a lead plaintiff, the longest class period governs." *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, No. 13-CV-05368-LHK, 2014 WL 2604991, at *1 n.3 (N.D. Cal. June 10, 2014).

The Pension Fund Group submits that it should be appointed lead plaintiff on behalf of the putative Class because it has a significant financial stake in the litigation, having suffered a loss of approximately $1,034,933 on its investments in the Company's securities during the Class Period. This substantial financial interest will ensure that the Pension Fund Group will vigorously prosecute the claims against Defendants.  The Pension Fund Group also readily satisfies the relevant requirements of Rule 23 because its claims are typical of those of absent Class members and it will fairly and adequately represent the interests of the proposed Class.

The Pension Fund Group's members, Plymouth County and SMW Pension Fund, are experienced fiduciaries and sophisticated institutional investors that have experience serving as a lead plaintiff.  They are precisely the type of institutional investor whose participation in securities class actions Congress sought to encourage through the enactment of the PSLRA.  *In re Cendant Corp. Litig.*, 264 F.3d 201, 273 (3d Cir. 2001) ("purpose of the legislation was to encourage institutional investors to serve as lead plaintiff, predicting that their involvement would significantly benefit absent class members").  The Pension Fund Group is committed to undertaking the responsibilities necessary for the efficient prosecution of the consolidated action.

Finally, the Court should approve the Pension Fund Group's selection of Berman Tabacco as lead counsel on behalf of the Class.  Berman Tabacco is a nationally recognized securities class action firm that has achieved substantial recoveries for the benefit of injured investor classes and has the expertise and resources necessary to provide high-quality legal representation and effectively protect the interests of the Class.

## II.    SUMMARY OF THE FACTS

Outset is a medical technology company.[2]  Its primary products are devices used in dialysis care, including the Tablo Hemodialysis System and the TabloCart.  ¶2.  The Tablo Hemodialysis System ("Tablo") is a dialysis machine.  *Id.*  The TabloCart is an accessory to Tablo.  *Id.*

---

[2] Unless otherwise noted, all references "¶__" are to paragraphs in the first-filed complaint in *Porcelli v. Outset, et al.*, No. 5:24-CV-06124-EJD (N.D. Cal. Aug. 29, 2024), ECF No. 1.

On July 29, 2022, the Company received Section 510(k) clearance from the U.S. Food and Drug Administration ("FDA") for the Tablo Hemodialysis System as "indicated for use in patients with acute and/or chronic renal failure, with or without ultrafiltration, in an acute or chronic care facility" and "in the home." ¶2.

On July 7, 2023, Outset disclosed that it had received a Warning Letter from the FDA which "asserted that certain materials . . . promote continuous renal replacement therapy (CRRT), a modality outside of the current indications for the Tablo Hemodialysis System" and "assert[ed] that the TabloCart with Prefiltration . . . requires prior 510(k) clearance for marketing authorization." ¶3 (alterations in original). The Company stated it would "work collaboratively with the FDA to resolve this observation, including potentially submitting a 510(k) on TabloCart." *Id*. On this news, Outset's stock price fell $1.20, or 5.9%, to close at $19.26 per share on July 10, 2023, on unusually heavy trading volume. ¶4.

On August 2, 2023, the Company issued a press release which announced a "Shipment Pause of TabloCart with Prefiltration Pending 510(k) Clearance." ¶5. On this news, Outset's stock price fell $1.97, or 10.18%, to close at $17.39 per share on August 3, 2023, on unusually heavy trading volume. ¶6.

On October 12, 2023, after the market closed, the Company revealed that revenue growth had been significantly impacted by the FDA's warning letter. ¶7. Specifically, the Company issued a press release announcing preliminary third quarter 2023 financial results, as well as updated financial guidance for 2023 revenue, which reflected that "[g]rowth in the quarter was dampened by a larger-than-expected impact in the field from the recent FDA warning letter." *Id*. (alterations in original). On this news, the Company's share price fell $3.38, or 49.9%, to close at $3.39 per share on October 13, 2023, on unusually heavy trading volume. ¶8.

On August 7, 2024, Outset released its second quarter 2024 financial results, significantly missing consensus estimates and lowering its full year 2024 revenue guidance by $39 million at the midpoint. ¶9. The Company disclosed it would be forced to take "clear steps to improve our execution" including "sales team and process restructuring." *Id*. As a result, the Company

disclosed it would be unable to deliver on a post-approval sales ramp of TabloCart previously forecast. *Id*. On this news, the Company's share price fell $2.33, or 68.53%, to close at $1.07 per share on August 8, 2024, on unusually heavy trading volume. ¶10.

The Actions allege that throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. ¶11. Specifically, Defendants failed to disclose to investors: (1) the Tablo products were marketed for continuous renal replacement therapy, which is not one of the indications approved by the FDA; (2) that, as a result, Outset was reasonably likely to submit an additional 510(k) application for the Tablo products; (3) that there was a substantial risk that the Company would cease sales of the Tablo products pending FDA approval of additional indications; (4) that Outset lacked the sales team and process to execute on the ramp of Tablo sales; (5) that, as a result of the foregoing, the Company's revenue growth would be adversely impacted; and (6) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis. *Id*.

The Actions further allege that the price of the Outset's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed through a series of partial disclosures, causing investors' losses. ¶63. Thus, Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class. ¶62

## III.    ARGUMENT

### A.    The Actions Should Be Consolidated for All Purposes

Civil Local Rule 3-12 of the United States District Court for the Northern District of California defines related cases as those actions which "concern substantially the same parties, property, transaction or event" and where it "appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different

Judges." Civil L.R. 3-12(a). The Actions, listed below and captioned above, meet the definition of related cases under Local Rule 3-12(a):

| Name | Case Number | Filing Date |
| --- | --- | --- |
| *Porcelli v. Outset., et al.* | 5:24-cv-06124-EJD | August 29, 2024 |
| *Plymouth County v. Outset., et al.* | 5:24-cv-07267-HSG | October 18, 2024 |

Each of the plaintiffs in these Actions purports to be a purchaser of Outset securities and alleges claims against the Company and certain of its current and former executives for violations of Sections 10(b) and 20(a) of the Exchange Act. Each complaint contains similar allegations about the same parties, transactions and events—chiefly the Company's representations concerning FDA clearance of the TabloCart, improper marketing of Tablo and its sales team and process to execute on the ramp of Tablo sales. Conducting these actions before different judges would result in unduly burdensome duplication of labor and expense and would risk conflicting results respecting the same legal and factual issues. The cases should, therefore, be related.

Additionally, the Court should consolidate the Actions. The PSLRA provides that, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the court shall not determine the most adequate plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. §78u-4(a)(3)(B)(ii). The PSLRA advises courts to make the decision regarding appointment of a lead plaintiff for the consolidated action "[a]s soon as practicable after [the consolidation] decision is rendered." *Id*.

Under Federal Rule of Civil Procedure 42(a), "[w]hen actions involving a common question of law or fact are pending before the court," it may order all the actions consolidated to prevent unnecessary costs or delay. *Berg v. Guthart*, No. 5:14-CV-00515-EJD, 2014 WL 3749780, at *1 (N.D. Cal. July 30, 2014) (Davila, J.) (citing *Investors Research Co. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989)). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy

[NO. 5:24-cv-06124-EJD] PENSION FUND GROUP'S NOTICE OF MOTION AND MOTION FOR RELATION AND CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF                    7

served by consolidation. *See Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1133 (C.D. Cal. 1999) (consolidating six actions asserting claims against different defendants over different class periods).

The Actions at issue here present common questions of law and fact. The Actions assert claims under the Exchange Act on behalf of investors who allegedly were defrauded by Outset and certain current and former officers. The Actions allege substantially the same wrongdoing, namely that Defendants issued materially false and misleading statements and omissions regarding FDA clearance of Tablo and TabloCart, improper marketing practices and inadequate staffing to ramp sales of Tablo which artificially inflated Outset's stock price and subsequently damaged the Class when the price of Outset's securities declined as the truth emerged over time. Consolidation of the Actions is therefore appropriate.

### B. The Pension Fund Group Is The "Most Adequate Plaintiff" And Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for selecting a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§78u-4(a)(1) & (a)(3)(B) (setting forth procedure for selecting lead plaintiff); *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). The PSLRA provides that within 20 days after the date on which a class action is filed, the plaintiff shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class of the pendency of the action, the claims asserted therein, and the purported class period. 15 U.S.C. §78u-4(a)(3)(A)(i). The PSLRA then provides that any member of the purported class may move the court to serve as lead plaintiff within 60 days after publication of the required notice. *See* 15 U.S.C. §78u-4(a)(3)(A)(i)(II).

Next, the PSLRA provides that a court shall adopt a presumption that the "most adequate plaintiff" is the "person or group of persons" that: (1) filed a complaint or made a motion to serve as lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) who otherwise satisfies the requirements of Rule 23. *See Stephens v. Maplebear Inc.*, No. 24-CV-00465-

EJD, 2024 WL 3262617, at *2 (N.D. Cal. July 1, 2024) (Davila, J.) (citing 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)); *See also Das v. Unity Software Inc.*, No. 5:22-CV-03962-EJD, 2023 WL 1927739, at *3 (N.D. Cal. Feb. 10, 2023) (appointing a group of two institutional investors as lead plaintiff); *Leventhal v. Chegg, Inc.,* No. 5:21-CV-09953-EJD, 2022 WL 4099454, at *3 (N.D. Cal. Sept. 7, 2022) (Davila, J.) (same).

The Pension Fund Group respectfully submits that it is the presumptive "most adequate plaintiff" because it has complied with the PSLRA procedural requirements, holds the largest financial interest of any known movant, and satisfies Rule 23's typicality and adequacy requirements.

### 1. The Pension Fund Group Has Satisfied the PSLRA's Procedural Requirements

The Pension Fund Group filed this motion to serve as lead plaintiff in a timely manner. On August 29, 2024, plaintiff in the first-filed action published notice in *Business Wire* pursuant to 15 U.S.C. §78u-4(a)(3)(A)(i). *See* Lavallee Decl. Ex. 1. The notice advised Class members of the existence of the lawsuit and described the claims asserted therein. The notice also advised Class members of their right to file a motion to be appointed as lead plaintiff within 60 days of the date of the notice, *i.e.*, on or before October 28, 2024.[3] The Pension Fund Group has filed its motion within 60 days of the notice. Therefore, the Pension Fund Group's Motion is filed within the time period prescribed by the PSLRA.

---

[3] On October 18, 2024, Plymouth County filed a related complaint in this District and published a notice in *Business Wire* alerting members of the putative class to the pendency of that action, that the class period had been extended in that action, and reiterating the October 28, 2024 deadline to seek appointment as Lead Plaintiff. *See* Lavallee Decl. Ex. 2. The deadline to move for Lead Plaintiff does not change even if another complaint is filed. *See* 15 U.S.C. §78u-4(a)(3)(A)(ii) ("If more than one action on behalf of a class asserting substantially the same claim or claims . . . is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published[.]")

Moreover, pursuant to Section 21D(a)(2) of the Exchange Act and in accordance with applicable Local Rules, the Pension Fund Group has signed and submitted certifications and a Joint Declaration detailing trading in Outset securities and its suitability to serve as a class representative in this case.  *See* Lavallee Decl. Exs. 3, 4.

### 2.    The Pension Fund Group Has the Largest Financial Interest in the Relief Sought by the Class

In selecting the presumptive lead plaintiff, the district court must evaluate the alleged losses of the various movant plaintiffs.  *Maplebear Inc.*, 2024 WL 3262617, at *2 (citing *Cavanaugh*, 306 F.3d at 730).

"In calculating a movant's financial interest, courts typically consider four factors, often referred to as the *Lax-Olsten* factors: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period."  *Id.* at *3 (citations and internal quotation marks omitted).

During the Class Period, the Pension Fund Group purchased 31,835 shares of Outset common stock; purchased 15,397 net shares; expended total net funds of $1,058,649; and suffered a loss of approximately $1,034,933 on both a LIFO basis and under a FIFO basis.  *See* Lavallee Decl. Ex. 5.  The Pension Fund Group is unaware of any other movant with a larger financial interest in the outcome of this litigation.  Because it also satisfies Rule 23's typicality and adequacy requirements, the Pension Fund Group is entitled to the legal presumption that it is the "most adequate plaintiff."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

### 3.    The Pension Fund Group Satisfies the Requirements of Rule 23

In addition to the largest financial interest requirement, the PSLRA also directs that the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).  Only a "prima facia showing of typicality and adequacy" is required at the lead plaintiff selection stage.  *Maplebear*, 2024 WL 3262617, at *4 (quoting *Deinnocentis v. Dropbox, Inc.*, No. 19-cv-06348, 2020 WL 264408, at *4 (N.D. Cal. Jan. 16, 2020)).

As detailed below, the Pension Fund Group satisfies the typicality and adequacy requirements of Rule 23(a) and is qualified to be appointed as lead plaintiff in this action.

### a. The Pension Fund Group's Claims are Typical of Those of the Class

Like all other members of the Class, the Pension Fund Group purchased Outset securities during the Class Period at allegedly artificially inflated prices due to Defendants' alleged misrepresentations and omissions, and suffered damages when those misrepresentations came to light. Because there are well-defined common questions of law and fact involved in this case, the claims asserted by Pension Fund Group, which are not subject to any unique defenses, are typical of the claims of other proposed Class members. *Maplebear*, 2024 WL 3262617, at \*4 (*prima facie* showing of typicality satisfied where movant "like all other putative class members, purchased Instacart stock during the class period at allegedly artificially inflated prices due to Defendants' alleged misrepresentations"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("Under [Rule 23's] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.").

### b. The Pension Fund Group Will Fairly and Adequately Protect the Interests of the Class

The adequacy of representation requirement of Rule 23(a)(4) is satisfied when a representative party establishes that it "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The test for adequacy asks whether the lead plaintiff and his counsel 'have any conflicts of interest with other class members' and whether the lead plaintiff and his counsel will 'prosecute the action vigorously on behalf of the class.'" *Welgus v. Trinet Grp., Inc.*, No. 15-cv-03625-BLF, 2015 WL 7770222, at \*3 (N.D. Cal. Dec. 3, 2015) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)).

The Pension Fund Group satisfies the adequacy of representation requirement. First, like all Class members, the Pension Fund Group purchased Outset securities during the Class Period and suffered losses when the truth about the Defendants' misrepresentations emerged. *See* Lavallee

Decl. Exs. 3, 4. For this reason, the Pension Fund Group's interests and those of the Class are closely aligned.

The Pension Fund Group is a small and cohesive group of sophisticated institutional investors who are committed to working together in the prosecution of this action and have demonstrated their ability to do so in the Joint Declaration. *See* Lavallee Decl. Ex. 4. The Joint Declaration affirms that the Pension Fund Group understands the duties owed to the Class, its commitment to jointly oversee counsel and the litigation in the best interests of the Class, and that it has the experience and resources to do so. *Id.* The Joint Declaration sets forth the reasons why the group was formed and details how the Pension Fund Group intends to oversee counsel and this litigation. *Id.* In light of their shared interests in protecting the interests of the Class and maximizing the recovery for the Class, they agreed that the partnership would be well-suited for this litigation and decided to jointly seek appointment as lead plaintiff. *Id.*

Further, the Pension Fund Group's members are sophisticated public pension funds and have the resources and experience to effectively manage this litigation. Lavallee Decl. Ex. 4. In fact, as sophisticated institutional investors with real financial interests in the litigation, the Pension Fund Group is a model lead plaintiff envisioned by Congress in its enactment of the PSLRA. *See* S. Rep. No. 104-98, at 11 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("The Committee believes that increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts . . . [and] believes that an institutional investor acting as lead plaintiff can, consistent with its fiduciary obligations, balance the interests of the class with the long-term interests of the company and its public investors."); *Mohanty v. BigBand Networks, Inc.*, No. C 07-5101 SBA, 2008 WL 426250, at *6 (N.D. Cal. Feb. 14, 2008) ("It is true that Congress's intent in enacting the PSLRA provisions governing the appointment of lead plaintiff was, in part, to increase the likelihood that institutional investors will serve as lead plaintiffs."). As an institutional investor, the Pension Fund Group understands its role as a fiduciary and possesses the financial sophistication and resources to ensure that counsel prosecute the case in the best interests of the Class. Indeed,

Plymouth County and SMW Pension Fund have successfully served as a lead plaintiff in complex securities class actions in the past. *See* Lavallee Decl., Exs. 3, 4.

Thus, the Pension Fund Group is exactly the type of movant that will ensure that all of the Class members are adequately represented in the instant litigation. In addition, the Pension Fund Group has chosen counsel, Berman Tabacco, who is fully capable of adequately pursuing this litigation, as discussed further below.

Lastly, there are no facts that indicate any conflicts of interest between the Pension Fund Group and the other Class members. *See Maplebear*, 2024 WL 3262617, at *4 (adequacy requirement satisfied when movant did not "appear to have any conflicts of interests with other class members, and his substantial stake in the litigation will be a strong incentive to litigate vigorously on behalf of the class"). Indeed, the events and course of conduct that give rise to the Pension Fund Group's claims are the same events and course of conduct that give rise to the claims of the Class. In sum, the Pension Fund Group satisfies the typicality and adequacy requirements of Rule 23.

### C.      The Court Should Approve the Pension Fund Group's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the class, subject to the court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). "[T]he court should generally employ a deferential standard in reviewing the lead plaintiff's choices." *In re Cendant Corp. Litig.*, 264 F.3d at 274. Courts should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the plaintiff class." H.R. Rep. No. 104-369 (1995) (Conf. Rep.), at 35, *as reprinted in* 1995 U.S.C.C.A.N. 730, 734; *see also Cavanaugh*, 306 F.3d at 734 ("Selecting a lawyer in whom a litigant has confidence is an important client prerogative and we will not lightly infer that Congress meant to take away this prerogative from securities plaintiffs. And, indeed, it did not. While the appointment of counsel is made subject to the approval of the court, the Reform Act clearly leaves the choice of class counsel in the hands of the lead plaintiff.").

Here, the Pension Fund Group has selected Berman Tabacco as Lead Counsel. Berman Tabacco is highly experienced in the area of securities litigation and class actions and has

successfully prosecuted numerous matters on behalf of investors as detailed in the firm's resume. *See* Lavallee Decl. Ex. 6. Berman Tabacco is one of the country's premier class action law firms with over 40 years of experience prosecuting securities and antitrust cases. *Id.* The firm has been consistently recognized as a "Top Plaintiffs' Firm" for its work "on behalf of individuals and institutions who have suffered financial harm due to violations of securities or antitrust laws" by Benchmark Litigation and has similarly been recognized as a leading firm in securities and antitrust litigation by Chambers USA, The Legal 500 and Best Law Firms. *Id.* Since the passage of the PSLRA, Berman Tabacco has held leadership positions in more than 100 federal securities class actions, recovering billions of dollars on behalf of defrauded investors, including: *In re BP PLC Sec. Litig.*, No. 10-md-2185 (S.D. Tex.) (as co-lead counsel representing the Ohio Public employees retirement system, the firm reached a $175 million settlement); *In re IndyMac Mortgage-BackedSec. Litig.*, No. 09-cv-04583-LAK (S.D.N.Y.) (as sole lead counsel representing the Wyoming State Treasurer and the Wyoming Retirement System, the firm reached settlements worth $346 million); *In re Fannie Mae 2008 Sec. Litig.*, No. 08-cv-07831-PAC (S.D.N.Y) (as co-lead counsel representing the Massachusetts Pension Reserves Investment Management Board, the firm achieved a $170 million settlement). *Id.* Berman Tabacco has the skill and knowledge necessary to enable them to prosecute this action effectively and expeditiously.

Thus, the Court may be assured that by granting this motion and approving the Pension Fund Group's selection of Berman Tabacco as lead counsel, the Class will receive the highest caliber of legal representation.

## IV.   CONCLUSION

For the foregoing reasons, the Pension Fund Group respectfully requests that the Court: (1) consolidate the above-captioned securities class actions; (2) appoint the Pension Fund Group as lead plaintiff on behalf of the proposed Class; and (3) approve its selection of Berman Tabacco as lead counsel for the proposed Class.

DATED:  October 28, 2024                    Respectfully submitted,

                                            **BERMAN TABACCO**

                                            By:   _/s/ Nicole Lavallee_
                                                      Nicole Lavallee

                                            Michael Dark
                                            425 California Street, Suite 2300
                                            San Francisco, CA 94104
                                            Telephone: (415) 433-3200
                                            Facsimile: (415) 433-6382
                                            Email: nlavallee@bermantabacco.com
                                                      mdark@bermantabacco.com

                                            *Counsel for the Pension Fund Group and*
                                            *Proposed Lead Counsel for the Class*