# Exhibit 17

MediRegs Device Regulation Suite

 Wolters Kluwer

*FDA - Warning Letters (1990 - present) > 2023 > Warning Letters*

# Outset Medical, Inc. - Warning Letter - Letter Issued: 07/05/2023

**Click to open document in a browser**
**CMS 656485**

---

Delivery Method:
   VIA UNITED PARCEL SERVICE
Product:
   Medical Devices

---

Recipient:
   Recipient Name
   Ms. Leslie L. Trigg
   Recipient Title
   CEO & Chair
   Outset Medical, Inc.
   3052 Orchard Drive
   San Jose, CA 95134-2011
   United States

Issuing Office:
   Center for Devices and Radiological Health
   United States

---

**WARNING LETTER**
**CMS# 656485**

July 5, 2023

Dear Ms. Trigg,

During an inspection of your firm located at 3052 Orchard Drive in San Jose, CA on January 17, 2023, through February 10, 2023, investigators from the United States Food and Drug Administration (FDA) determined that your firm is a medical device manufacturer of the Tablo Hemodialysis System and TabloCart with Prefiltration. Under section 201(h) of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. § 321(h), these products are devices because they are instruments, apparatuses, implements, machines, contrivances, implants, in vitro reagents, or other similar or related articles, including any component, part, or accessory, which are intended for use in the diagnosis of disease or other conditions or in the cure, mitigation, treatment, or prevention of disease, or to affect the structure or any function of the body.

We received responses from you dated March 3, 2023, concerning our investigators' observations noted on the Form FDA 483 (FDA 483), List of Inspectional Observations, that was issued to your firm. We address this response below, in relation to each of the noted violations, and any additional responses will be reviewed as part of your warning letter response.

**Unapproved Device Violations**

1. The TabloCart with Prefiltration is adulterated under section 501(f)(1)(B) of the Act, 21 U.S.C. § 351(f)(1)(B), because your firm does not have an approved application for premarket approval (PMA) in effect pursuant to section 515(a) of the Act, 21 U.S.C. § 360e(a), or an approved application for an investigational device

© 2025 CCH Incorporated and its affiliates and licensors. All rights reserved.

exemption under section 520(g) of the Act, 21 U.S.C. § 360j(g). The device is also misbranded under section 502(o) the Act, 21 U.S.C. § 352(o), because your firm did not notify the agency of its intent to introduce the device into commercial distribution, as required by section 510(k) of the Act, 21 U.S.C. § 360(k), and 21 CFR 807.81(a)(3)(i).

You have not submitted any premarket notification to the Agency for the TabloCart with Prefiltration. However, the evidence and marketing materials reviewed at the inspection and found on your website [www.outsetmedical.com] on March 15, 2023, indicate that the TabloCart with Prefiltration is a device. For example, your materials state that the TabloCart with Prefiltration is used for "prefiltration"; has "[t]hree customizable filter configurations [to] enable added filtration of carbon and sediment, depending on a facility's incoming water quality"; and is intended to be used with your Tablo Hemodialysis System.

It appears that the TabloCart with Prefiltration could be classified under 21 CFR 876.5665 (Water purification system for hemodialysis), a Class II device type subject to premarket notification:

"(a) Identification. A water purification system for hemodialysis is a device that is intended for use with a hemodialysis system and that is intended to remove organic and inorganic substances and microbial contaminants from water used to dilute dialysate concentrate to form dialysate. This generic type of device may include a water softener, sediment filter, carbon filter, and water distillation system."

TabloCart with Prefiltration appears to meet this definition because:

- It is intended to be used with a Hemodialysis System
- It is intended to remove organic and inorganic substances from water used to dilute dialysate concentrate to form dialysate

The TabloCart with Prefiltration is intended to improve the incoming water quality and lower the pressure specifications for the Tablo Hemodialysis System to include water that exceeds **(b)(4)**. Inadequate filtration of lower quality incoming water may result in adverse effects arising from organic and inorganic contaminants that might be found in improperly prepared dialysis fluid. As noted above, your firm is marketing this device without clearance or premarket approval.

For a device requiring premarket approval, the notification required by section 510(k) is deemed satisfied when a PMA is pending before the FDA [21 CFR 807.81(b)]. The kind of information that your firm needs to submit in order to obtain approval or clearance for the devices is described on the Internet at http://www.fda.gov/MedicalDevices/DeviceRegulationandGuidance/HowtoMarketYourDevice/default.htm. The FDA will evaluate the information that your firm submits and decide whether the product may be legally marketed.

2. The Tablo Hemodialysis System is adulterated under section 501(f)(1)(B) of the Act, 21 U.S.C. § 351(f)(1)(B), because your firm does not have an approved application for premarket approval (PMA) in effect pursuant to section 515(a) of the Act, 21 U.S.C. § 360e(a), or an approved application for an investigational device exemption under section 520(g) of the Act, 21 U.S.C. § 360j(g). The device is also misbranded under section 502(o) the Act, 21 U.S.C. § 352(o), because your firm did not notify the agency of its intent to introduce the device into commercial distribution, as required by section 510(k) of the Act, 21 U.S.C. § 360(k), and 21 CFR 807.81(a)(3)(i).

You currently have clearance for the Tablo Hemodialysis System under K223248 for the following indications:

"The Tablo Hemodialysis System is indicated for use in patients with acute and/or chronic renal failure, with or without ultrafiltration, in an acute or chronic care facility or in the home. Treatments must be administered under a physician's prescription and observed by a trained individual who is considered competent in the use of the device. Treatment types available include Intermittent Hemodialysis (IHD), Sustained Low Efficiency Dialysis (SLED/ SLEDD), Prolonged Intermittent Renal Replacement Therapy (PIRRT), and Isolated Ultrafiltration."

However, the evidence reviewed at the inspection and marketing materials found on your website [www.outsetmedical.com] on May 11, 2023, show promotion of the Tablo Hemodialysis System for continuous renal replacement therapy (CRRT) treatment. For example, materials on your website state that two large hospitals converted to a program consisting solely of the Tablo Hemodialysis System and state, "This major

© 2025 CCH Incorporated and its affiliates and licensors. All rights reserved.          Jun 13, 2025 from MediRegs

conversion eliminated the need for several types of dialysis machines for different clinical needs, including intermittent hemodialysis (IHD) in the dialysis unit and continuous renal replacement therapy (CRRT) in critical care." Other materials on your website state that multiple hospitals who had established CRRT treatment programs "converted those CRRT programs over to Tablo with Extended Therapy" and states, "They also replaced their CRRT machines with Tablo with XT…"

We evaluated the FDA databases and did not find documentation that you have a cleared 510(k) or a premarket notification in-house for an Indications for Use that includes CRRT treatment. In addition, we note that during review of K223248, you confirmed that CRRT is distinct from the cleared indications for use, device specifications, and treatment modalities for the Tablo Hemodialysis System, and that PIRRT transitions to CRRT at **(b)(4)** of use[1]. Patients who require CRRT are typically hospitalized with acute illness resulting in acute kidney injury and possible severe hemodynamic instability, and the devices that provide CRRT treatment have unique features to enable continuous treatment (> 24 hours) for this patient population. Systems that cannot safely and reliably perform CRRT raise serious public health concerns when used for CRRT treatment, because failure of dialysis systems performing CRRT may result in fluid and electrolyte imbalances, inadequate ultrafiltration, infection, and patient harm/death. This change represents a significant modification outside the scope of the K223248 clearance that could significantly affect safety or effectiveness, resulting in a new device such that a separate, additional 510(k) premarket notification must be submitted [see 21 CFR 807.81(a)(3)(i)]. Thus, the sale of the Tablo Hemodialysis System for CRRT is unlawful.

For further explanation on the need for a new 510(k) for labeling changes and claims, the following information is from guidance document, Deciding When to Submit a 510(k) for a Change to an Existing Device[2]. The guidance states "most labeling changes that affect the substance, meaning, or scope of the indications for use could significantly affect safety or effectiveness and will require submission of a new 510(k)." Your firm's sale of the Tablo Hemodialysis System for CRRT treatment constitutes a change to the scope of the indications for use and significantly affects the safety or effectiveness of the device. Accordingly, this change requires the submission of a new 510(k).

For a device requiring premarket approval, the notification required by section 510(k) is deemed satisfied when a PMA is pending before the FDA [21 CFR 807.81(b)]. The kind of information that your firm needs to submit in order to obtain approval or clearance for the devices is described on the Internet at http://www.fda.gov/MedicalDevices/DeviceRegulationandGuidance/HowtoMarketYourDevice/default.htm. The FDA will evaluate the information that your firm submits and decide whether the product may be legally marketed.

Your response dated March 3, 2023, does not address these violations.

Your firm should take prompt action to address any violations identified in this letter. Failure to adequately address this matter may result in regulatory action being initiated by the FDA without further notice. These actions include, but are not limited to, seizure, injunction, and civil money penalties.

Other federal agencies may take your compliance with the FD&C Act and its implementing regulations into account when considering the award of federal contracts. Additionally, should FDA determine that you have Quality System regulation violations that are reasonably related to premarket approval applications for Class III devices, such devices will not be approved until the violations have been addressed. Should FDA determine that your devices or facilities do not meet the requirements of the Act, requests for Certificates to Foreign Governments (CFG) may not be granted.

Please notify this office in writing within fifteen business days from the date you receive this letter of the specific steps your firm has taken to address the noted violations, as well as an explanation of how your firm plans to prevent these violations, or similar violations, from occurring again. Include documentation of the corrections and/or corrective actions (which must address systemic problems) that your firm has taken. If your firm's planned corrections and/or corrective actions will occur over time, please include a timetable for implementation of those activities. If corrections and/or corrective actions cannot be completed within fifteen business days, state the reason for the delay and the time within which these activities will be completed.

Your firm's response should be comprehensive and address any violations included in this Warning Letter. If you believe that your products are not in violation of the FD&C Act, include your reasoning and any supporting information for our consideration as part of your response.

© 2025 CCH Incorporated and its affiliates and licensors. All rights reserved.        Jun 13, 2025 from MediRegs

MediRegs Device Regulation Suite

 Wolters Kluwer

Your firm's response should be sent to: Jessica Mu, Director of Compliance Branch, at oradevices3firmresponse@fda.hhs.gov. **Refer to CMS 656485** when replying. If you have any questions about the contents of this letter, please contact: Lauren Priest at Lauren.Priest@fda.hhs.gov.

Finally, you should know that this letter is not intended to be an all-inclusive list of the violations at your firm's facility. It is your firm's responsibility to ensure compliance with applicable laws and regulations administered by FDA. The specific violations noted in this letter and in the Inspectional Observations, FDA 483, issued at the close of the inspection may be symptomatic of serious problems in your firm's manufacturing and quality management systems. Your firm should investigate and determine the causes of any violations and take prompt actions to address any violations and bring the products into compliance.

Sincerely,
/S/

Courtney H. Lias, Ph.D.
Director
OHT3: Office of GastroRenal, ObGyn,
General Hospital and Urology Devices
Office of Product Evaluation and Quality
Center for Devices and Radiological Health

/S/

Shari J. Shambaugh, Program Division Director
Office of Medical Device and Radiological Health
Division 3

_____

**1** Refer to the final meeting minutes and presentation slides from a March 13, 2023 teleconference with FDA and statements in the 510(k) submission K223248.

**2** https://www.fda.gov/regulatory-information/search-fda-guidance-documents/deciding-when-submit-510k-change-existing-device

**Content current as of:**

07/18/2023

**Regulated Product(s)**

- Medical Devices

Source: http://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/outset-medical-inc-656485-07052023
Captured by MediRegs ™ on 07/19/2023 via MediScript

© 2025 CCH Incorporated and its affiliates and licensors. All rights reserved.        Jun 13, 2025 from MediRegs