# EXHIBIT A

*In re Outset Medical, Inc. Securities Litigation, Case No. 5:24-cv-06124-EJD*
**Exhibit A to Plaintiff's Corrected Appendix**

| PARAGRAPH | PARAGRAPH SUBPART | SUPPORTING ALLEGATIONS |
|---|---|---|
| ¶ **[181 / 201 / 262].** The truth that Outset was engaged in widespread and pervasive off-label promotion is evidenced by the following former Outset employee accounts: | **a.** Statements from Witnesses 1, 2, and 3 that Outset sales personnel marketed Tablo for CRRT; | **¶ 63** "Witness 1 said that Witness 1 and other sales staff members were instructed by Outset to market Tablo for CRRT. Witness 1 attended sales calls and meetings with Outset leadership where the instructions were always to promote and sell Tablo for CRRT. Witness 1 said Jamie Lewis, Senior Vice President Global Sales, and Micheal Aragon, Chief Medical Adviser, led these meetings. Witness 1 further relayed that Outset marketed Tablo as a 'Swiss Army Knife'" of dialysis that could be used for all applications, including for CRRT. According to Witness 1, neither the FDA nor FDA approval of Tablo was ever discussed on these calls or meetings, and they were just told to market Tablo for CRRT." |
| | | **¶ 64** "Witness 1 also discussed Tablo's 'value proposition.' Witness 1 said it was based on pitching Tablo as being the only equipment on the market that can be used in all dialysis markets and for all dialysis procedures, including CRRT, because CRRT on traditional machines is more expensive and complex to set up than Tablo. CRRT requires different equipment and different skills and/or staff than other dialysis." |
| | | **¶ 67** "Witness 1 relayed that Witness 1 marketed and sold Tablo for CRRT to the New York City Medical Center, the Nassau University Medical Center, and the Brooklyn Veterans Administration Hospital." |
| | | **¶ 70** "Witness 2 relayed that, prior to contacting customers, Witness 2 received sales and operational training from Outset consisting of two training sessions, one in San Diego, California and another in Columbus, Ohio. The marketing training Witness 2 received was to say that Tablo was okay for CRRT. Witness 2 said that Outset marketed Tablo as an extended care option capable of CRRT." |
| | | **¶ 76** "Witness 3 said that right around the time Outset received the FDA Warning Letter, a colleague told Witness 3 that Outset was specifically marketing Tablo for CRRT in Florida. Before that, Witness 3 did not know that representing that Tablo could be used for CRRT was wrong. Witness 3 also said that in selling the XT/Extended Therapy upgrade for Tablo, some sales staff referred to it as performing CRRT. Witness 3 said that, before the FDA Warning Letter, Outset was 'too aggressive' in marketing for CRRT, which is what led to the FDA Warning Letter." |
| | **b.** Witness 1's statement that Outset's "value proposition" marketing strategy included marketing Tablo for CRRT; | **¶ 64** "Witness 1 also discussed Tablo's 'value proposition.' Witness 1 said it was based on pitching Tablo as being the only equipment on the market that can be used in all dialysis markets and for all dialysis procedures, including CRRT, because CRRT on traditional machines is more expensive and complex to set up than Tablo. CRRT requires different equipment and different skills and/or staff than other dialysis." |
| | | **¶ 65** "Witness 1 explained that the infrastructure required to source the water for CRRT on traditional machines is extremely expensive. Healthcare centers usually require a built-in |

*In re Outset Medical, Inc. Securities Litigation*, *Case No. 5:24-cv-06124-EJD*
**Exhibit A to Plaintiff's Corrected Appendix**

| PARAGRAPH | PARAGRAPH SUBPART | SUPPORTING ALLEGATIONS |
|---|---|---|
| | | water room with reverse osmosis and filters to purify the water, and these rooms are very expensive to build and maintain." |
| | | ¶ 66 "Witness 1 further explained that CRRT machines are also extremely complex to set up and require more supplies, including 5-liter bags of dialysis. Nurses have to hang anywhere from eight to 15 of those bags throughout the course of CRRT on traditional machines. Witness 1 noted that it is extremely complex to string the lines on the machine and can take about an hour to accomplish for someone who is skilled at it." |
| | **c.** Statements from Witnesses 1 and 2 that Outset management directed and instructed the sales staff to market Tablo for CRRT, including at sales training sessions and calls and meetings; | ¶ 63 "Witness 1 said that Witness 1 and other sales staff members were instructed by Outset to market Tablo for CRRT. Witness 1 attended sales calls and meetings with Outset leadership where the instructions were always to promote and sell Tablo for CRRT. Witness 1 said Jamie Lewis, Senior Vice President Global Sales, and Micheal Aragon, Chief Medical Adviser, led these meetings. Witness 1 further relayed that Outset marketed Tablo as a 'Swiss Army Knife' of dialysis that could be used for all applications, including for CRRT. According to Witness 1, neither the FDA nor FDA approval of Tablo was ever discussed on these calls or meetings, and they were just told to market Tablo for CRRT." |
| | | ¶ 70 "Witness 2 relayed that, prior to contacting customers, Witness 2 received sales and operational training from Outset consisting of two training sessions, one in San Diego, California and another in Columbus, Ohio. The marketing training Witness 2 received was to say that Tablo was okay for CRRT. Witness 2 said that Outset marketed Tablo as an extended care option capable of CRRT." |
| | **d.** Statements from Witness 3 that Outset was overly aggressive in its marketing for CRRT, that they were told Outset was marketing Tablo for CRRT in Florida, and that in selling the XT/Extended Therapy upgrade for Tablo, sales staff referred to it as performing CRRT. | ¶ 76 "Witness 3 said that right around the time Outset received the FDA Warning Letter, a colleague told Witness 3 that Outset was specifically marketing Tablo for CRRT in Florida. Before that, Witness 3 did not know that representing that Tablo could be used for CRRT was wrong. Witness 3 also said that in selling the XT/Extended Therapy upgrade for Tablo, some sales staff referred to it as performing CRRT. Witness 3 said that, before the FDA Warning Letter, Outset was 'too aggressive' in marketing for CRRT, which is what led to the FDA Warning Letter." |
| | **e.** Statements from Witnesses 2 and 3 that at an all-hands call, a meeting, | ¶ 71 "Witness 2 said that, after receiving the FDA Warning Letter, Outset sent out a companywide email and an all-hands call was conducted instructing everyone to stop referring to CRRT while marketing Tablo. Witness 2 was on the all-hands call which was led by several members |

*In re Outset Medical, Inc. Securities Litigation*, Case No. 5:24-cv-06124-EJD
**Exhibit A to Plaintiff's Corrected Appendix**

| PARAGRAPH | PARAGRAPH SUBPART | SUPPORTING ALLEGATIONS |
|---|---|---|
| | and in a companywide email after the FDA issued the FDA Warning Letter, Outset instructed sales personnel to stop using the term CRRT; and | of Outset's management group, including Jen Buchan Sipe, former Senior Director, Marketing, and Jennifer Schuler, former Senior Director of Product Management.  Witness 2 said the instruction from Outset management was to stop using the term CRRT when selling and marketing Tablo.  The staff was also instructed to purge all prior marketing materials, both hard copy and electronic, that existed prior to the FDA Warning Letter."<br><br>¶ 77  "Witness 3 said that it was not until after the FDA Warning Letter that Outset began training personnel on what could not be represented to customers about the Tablo, including about CRRT.  Consistent with Witness 2's account, Witness 3 relayed that, shortly after the FDA Warning Letter, a meeting was held in which attendees were told not to use the term CRRT." |
| | **f.** Statements from Witness 2 that at the all-hands meeting, Outset management instructed employees to purge any marketing materials that existed prior to the FDA Warning Letter. | ¶ 71  "Witness 2 was on the all-hands call which was led by several members of Outset's management group, including Jen Buchan Sipe, former Senior Director, Marketing, and Jennifer Schuler, former Senior Director of Product Management. . . . The staff was [] instructed to purge all prior marketing materials, both hard copy and electronic, that existed prior to the FDA Warning Letter." |
| ¶ [182 / 202 / 263].  The truth that Outset was engaged in widespread and pervasive off-label promotion is further evidenced by the following Outset customer accounts: | **a.** Witness 4's account that the marketing materials received for Tablo included references to CRRT and the proposal from Outset for the Tablo referenced using Tablo for CRRT; | ¶ 78  "Witness 4 also relayed that the marketing materials from the Company for Tablo indicated that Tablo could be used for CRRT.  Witness 4 said the health system received a proposal for the Tablo units from Outset in 2020 and Witness 4 believes there was language contained in the proposal about upgrading the Tablo for CRRT." |
| | **b.** Statements from Witnesses 4, 5, 6, and 9 that Outset personnel told them Tablo could perform CRRT.  Witnesses 4 and 5 further stated they were unaware that Tablo did not have FDA clearance for CRRT; | ¶ 78  "Witness 4 relayed that the health care system looked into Tablo as a cost saving measure for dialysis. As part of this exploration, Witness 4 relayed that Outset employees stated that Tablo could be used for CRRT but it required an upgrade to do so. . . . Witness 4 stated that no one from Outset ever mentioned that Tablo was not approved by the FDA for CRRT.  In fact, Witness 4 believed '100%,' based on information received from Outset, that Tablo was FDA approved for CRRT.  Witness 4 said Witness 4 had several calls with Michael Aragon, Chief Medical Officer of Outset, about how the system was going to use Tablo and Aragon never said the unit was not FDA approved for CRRT.  Witness 4 also had discussions with Defendant Trigg about Tablo, including an in person visit from Defendant Trigg at Witness 4's healthcare system." |

3

| PARAGRAPH | PARAGRAPH SUBPART | SUPPORTING ALLEGATIONS |
|---|---|---|
| | | ¶ 80 "Witness 5 said that Outset personnel provided training to Witness 5 on the operation of the units for CRRT.  Witness 5 said the training was described as 'Training the Trainers.'  Outset trained Witness 5 who then was responsible for training other personnel at the hospital." |
| | | ¶ 81 "Witness 5 was unaware that Outset had not received FDA clearance for Tablo to be used for CRRT." |
| | | ¶ 84 "Witness 6 recalled Outset technicians and other Outset employees stating that Tablo was capable of CRRT." |
| | | ¶ 89 "**Witness 9** is a physician who submitted a complaint regarding Tablo to the FDA in April 2024[.] . . .  According to the physician's complaint, prior to the disclosure of the FDA Warning Letter, Outset told their institution that Tablo could be used for CRRT:  *Outset medical initially sold tablo hemodialysis devices to our institution with the statement that they could be used for* intermittent, pirt (prolonged intermittent renal replacement therapy)/sledd (sustained low-efficiency dialysis) *or crrt (continuous renal replacement therapy).*" |
| | **c.** Witness 8's account that Outset was marketing Tablo for CRRT; | ¶ 88 "Witness 8 has been the Chief of Nephrology at South Shore Health since July 2022 and has been a nephrologist in the Greater Boston Area since November 2017.  Witness 8, who uses Tablo at some of the hospitals that Witness 8 works in, relayed that Witness 8 believes that Outset was marketing Tablo for CRRT." |
| | **d.** Statements from Witness 5 that Outset trained Witness 5 on how to use Tablo for CRRT; and | ¶ 80 "Witness 5 said that Outset personnel provided training to Witness 5 on the operation of the units for CRRT.  Witness 5 said the training was described as 'Training the Trainers.'  Outset trained Witness 5 who then was responsible for training other personnel at the hospital." |
| | **e.** Statements from Witnesses 4 and 7 [and 9] that their health system employers purchased Tablo for use for CRRT and replaced CRRT machines. | ¶ 78 "**Witness 4** has been the President & CEO of a large health care system in New York since 2023 and was previously its Executive Vice President and Chief Business Development Officer and held this position since before the Class Period.  Witness 4 relayed that the health care system looked into Tablo as a cost saving measure for dialysis.  As part of this exploration, Witness 4 relayed that Outset employees stated that Tablo could be used for CRRT but it required an upgrade to do so. Witness 4 also relayed that the marketing materials from the Company for Tablo indicated that Tablo could be used for CRRT.  Witness 4 said the health system received a proposal for the Tablo units from Outset in 2020 and Witness 4 believes there was language contained in the proposal about upgrading the Tablo for CRRT.  Witness 4 stated that no one from Outset ever mentioned that Tablo was not approved by the FDA for CRRT.  In fact, Witness 4 believed '100%,' based on information received from Outset, that Tablo was FDA approved for CRRT.  Witness 4 said Witness 4 had several calls with Michael |

*In re Outset Medical, Inc. Securities Litigation*, Case No. 5:24-cv-06124-EJD
**Exhibit A to Plaintiff's Corrected Appendix**

| PARAGRAPH | PARAGRAPH SUBPART | SUPPORTING ALLEGATIONS |
|---|---|---|
| | | Aragon, Chief Medical Officer of Outset, about how the system was going to use Tablo and Aragon never said the unit was not FDA approved for CRRT.  Witness 4 also had discussions with Defendant Trigg about Tablo, including an in person visit from Defendant Trigg at Witness 4's healthcare system.  The system ultimately bought Tablo units to replace other machines, including those that were used for CRRT for ICU patients in the hospital.  They disposed of the prior CRRT machines and used Tablo for CRRT exclusively." |
| | | ¶ 86 "Witness 7 said that her hospital had been using DaVita, Inc., a nationwide company that provides dialysis services, to outsource dialysis, but when its contract came up for renewal, the cost was going to increase significantly, so the system looked at other options for dialysis, including Outset.  During this process, Outset made presentations to her system's board of decision-makers.  Thereafter, the system opted to purchase 27 Tablo units, seven of which were dedicated to CRRT." |
| | | ¶ 89 Witness 9 stated **"*Outset medical initially sold tablo hemodialysis devices to our institution with the statement that they could be used for*** intermittent, pirt (prolonged intermittent renal replacement therapy)/sledd (sustained low-efficiency dialysis) ***or crrt (continuous renal replacement therapy).***  We stopped using traditional crrt and replaced with tablo xt for 22 hours under this pretense[.]" |
| ¶ [183 / 203 / 264].  The truth that Outset was engaged in widespread and pervasive off-label promotion is further evidenced by the July 5, 2023 FDA Warning Letter, which followed an inspection of Outset's facilities and website and discussion with Outset management, and which stated the FDA findings that Outset was engaged in off-label marketing, including that: | **a.** Tablo was "adulterated" and "misbranded" under the FDCA because Tablo was not cleared for CRRT and Outset's sale of Tablo for CRRT is unlawful; | ¶ 53 "[T]he FDA conducted an inspection at Outset's facility located in San Jose, California.  Thereafter, and unknown to investors, Outset held at least one meeting with the FDA, on March 13, 2023, which included a discussion of Tablo's FDA clearance at which Defendant Trigg *'confirmed that CRRT is distinct from the cleared indications for use, device specifications, and treatment modalities for the Tablo.'*  On July 5, 2023, the FDA sent its Warning Letter to Defendant Trigg, asserting that Tablo and TabloCart were misbranded and adulterated." |
| | | ¶ 55 "In fact, the FDA Warning Letter, which is addressed to Defendant Trigg, states that '[d]uring an inspection of your firm located at 3052 Orchard Drive in San Jose, CA on January 17, 2023 through February 10, 2023, investigators from the United States Food and Drug Administration (FDA) determined that your firm is a medical device manufacturer of the Tablo Hemodialysis System and TabloCart with Prefiltration.'  The letter further states that: |
| | | Under section 201(h) of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. § 321(h), [both of] these products are devices because they are instruments, apparatuses, implements, machines, contrivances, implants, in vitro reagents, or other similar or related articles, including any component, part, or accessory, which are intended for use in the diagnosis of disease or other conditions or in the cure, |

*In re Outset Medical, Inc. Securities Litigation*, Case No. 5:24-cv-06124-EJD
**Exhibit A to Plaintiff's Corrected Appendix**

| PARAGRAPH | PARAGRAPH SUBPART | SUPPORTING ALLEGATIONS |
|---|---|---|
| | | mitigation, treatment, or prevention of disease, or to affect the structure or any function of the body." |
| | | ¶ 56 "Specifically, as to TabloCart, the FDA Warning Letter states that TabloCart was both 'adulterated' and 'misbranded' as it was being marketed and distributed without FDA clearance or premarket approval stating that Tablo is a water purification system for hemodialysis under 21 C.F.R. § 876.5665, a Class II medical device subject to premarket notification:<br><br>A water purification system for hemodialysis is a device that is intended for use with a hemodialysis system and that is intended to remove organic and inorganic substances and microbial contaminants from water used to dilute dialysate concentrate to form dialysate. This generic type of device may include a water softener, sediment filter, carbon filter, and water distillation system.<br><br>TabloCart with Prefiltration appears to meet this definition because:<br><br>- It is intended to be used with a Hemodialysis System<br>- It is intended to remove organic and inorganic substances from water used to dilute dialysate concentrate to form dialysate…<br><br>As noted above, ***your firm is marketing this device without clearance or premarket approval.***" |
| | | ¶ 57 "As to Tablo, the FDA Warning Letter states that Tablo was both ***'misbranded' and 'adulterated'*** because ***'evidence reviewed . . . show promotion of the Tablo Hemodialysis System for continuous renal replacement therapy (CRRT) treatment,'*** which is not included in Tablo's indications for use." |
| | | ¶ 58 "As an example of such off-label marketing, the FDA Warning Letter discusses certain materials from Outset's website, stating:<br><br>[M]aterials on your website state that two large hospitals converted to a program consisting solely of the Tablo Hemodialysis System and state, 'This major conversion eliminated the need for several types of dialysis machines for different clinical needs, including intermittent hemodialysis (IHD) in the dialysis unit and continuous renal replacement therapy (CRRT) in critical care.'<br><br>Other materials on your website state that multiple hospitals who had established CRRT treatment programs 'converted those CRRT programs over to Tablo with Extended Therapy' and states, 'They also replaced their CRRT machines with Tablo with XT...'" |

*In re Outset Medical, Inc. Securities Litigation, Case No. 5:24-cv-06124-EJD*
**Exhibit A to Plaintiff's Corrected Appendix**

| PARAGRAPH | PARAGRAPH SUBPART | SUPPORTING ALLEGATIONS |
|---|---|---|
| | | ¶ 59 "The FDA Warning Letter to Defendant Trigg also states that *'you confirmed that CRRT is distinct from the cleared indications for use, device specifications, and treatment modalities for the Tablo,'* citing to both meeting minutes and presentation slides from a *March 13, 2023* teleconference between Outset and the FDA and statements in Outset's 510(k) submission for Tablo." |
| | | ¶ 60 "In the FDA Warning Letter, the FDA also emphasizes *the serious health and safety risks* that Outset's off-label marketing raised: |
| | | Patients who require CRRT are typically hospitalized with acute illness resulting in acute kidney injury and possible severe hemodynamic instability, and the *devices that provide CRRT treatment have unique features* to enable continuous treatment (> 24 hours) for this patient population. |
| | | *Systems that cannot safely and reliably perform CRRT raise serious public health concerns when used for CRRT treatment, because failure of dialysis systems performing CRRT may result in fluid and electrolyte imbalances, inadequate ultrafiltration, infection, and patient harm/death.* |
| | | This change represents a significant modification outside the scope of the K223248 clearance that *could significantly affect safety or effectiveness,* resulting in a new device such that a separate, additional 510(k) premarket notification must be submitted [see 21 CFR 807.81(a)(3)(i)].  *Thus, the sale of the Tablo Hemodialysis System for CRRT is unlawful.*" |
| | **b.** The FDA's inspection of Outset beginning in January 2023 and review of the Company's website found evidence and marketing that show promotion of Tablo for CRRT, including, by way of example, certain marketing material on Outset's website; | ¶ 53 "Beginning no later than January 17, 2023 and continuing through February 10, 2023, the FDA conducted an inspection at Outset's facility located in San Jose, California. Thereafter, and unknown to investors, Outset held at least one meeting with the FDA, on March 13, 2023, which included a discussion of Tablo's FDA clearance at which Defendant Trigg 'confirmed that CRRT is distinct from the cleared indications for use, device specifications, and treatment modalities for the Tablo.'  On July 5, 2023, the FDA sent its Warning Letter to Defendant Trigg, asserting that Tablo and TabloCart were misbranded and adulterated." |
| | | ¶ 54 "Then, on Friday, July 7, 2023, after the market closed, almost four months after Outset and the FDA had a call during which they discussed Tablo's lack of clearance for CRRT, Outset filed a Form 8-K disclosing that it had received the FDA Warning Letter.  Specifically, the Company stated the following and attempted to downplay the issues and their impact: |
| | | The first observation asserts that certain materials reviewed by the FDA and found on the Company's website promote continuous renal replacement therapy (CRRT), |

*In re Outset Medical, Inc. Securities Litigation*, *Case No. 5:24-cv-06124-EJD*
**Exhibit A to Plaintiff's Corrected Appendix**

| PARAGRAPH | PARAGRAPH SUBPART | SUPPORTING ALLEGATIONS |
|---|---|---|
| | | a modality outside of the current indications for the Tablo® Hemodialysis System. The Company believes this concern has been effectively addressed through labeling and promotional changes already underway. |
| | | The second observation asserts that the TabloCart with Prefiltration (the 'TabloCart'), requires prior 510(k) clearance for marketing authorization. TabloCart, an accessory to the Tablo System, launched in the third quarter of 2022 and sales to date have not been material to the Company's financial results. The Company intends to work collaboratively with the FDA to resolve this observation, including potentially submitting a 510(k) on TabloCart." |
| | ¶ 55 | "In fact, the FDA Warning Letter, which is addressed to Defendant Trigg, states that '[d]uring an inspection of your firm located at 3052 Orchard Drive in San Jose, CA on January 17, 2023 through February 10, 2023, investigators from the United States Food and Drug Administration (FDA) determined that your firm is a medical device manufacturer of the Tablo Hemodialysis System and TabloCart with Prefiltration.' The letter further states that: |
| | | Under section 201(h) of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. § 321(h), [both of] these products are devices because they are instruments, apparatuses, implements, machines, contrivances, implants, in vitro reagents, or other similar or related articles, including any component, part, or accessory, which are intended for use in the diagnosis of disease or other conditions or in the cure, mitigation, treatment, or prevention of disease, or to affect the structure or any function of the body." |
| | ¶ 56 | "Specifically, as to TabloCart, the FDA Warning Letter states that TabloCart was both 'adulterated' and 'misbranded' as it was being marketed and distributed without FDA clearance or premarket approval stating that Tablo is a water purification system for hemodialysis under 21 C.F.R. § 876.5665, a Class II medical device subject to premarket notification: |
| | | A water purification system for hemodialysis is a device that is intended for use with a hemodialysis system and that is intended to remove organic and inorganic substances and microbial contaminants from water used to dilute dialysate concentrate to form dialysate. This generic type of device may include a water softener, sediment filter, carbon filter, and water distillation system. |
| | | TabloCart with Prefiltration appears to meet this definition because: |
| | | - It is intended to be used with a Hemodialysis System<br>- It is intended to remove organic and inorganic substances from water used to dilute dialysate concentrate to form dialysate… |

*In re Outset Medical, Inc. Securities Litigation*, *Case No. 5:24-cv-06124-EJD*
**Exhibit A to Plaintiff's Corrected Appendix**

| PARAGRAPH | PARAGRAPH SUBPART | SUPPORTING ALLEGATIONS |
|---|---|---|
| | | As noted above, ***your firm is marketing this device without clearance or premarket approval.***" |
| | | ¶ 57  "As to Tablo, the FDA Warning Letter states that Tablo was both 'misbranded' and 'adulterated' because ***'evidence reviewed at the [January 17, 2023 through February 10, 2023] inspection and marketing materials found on [Outset's] website [www.outsetmedical.com] on May 11, 2023 show promotion of the Tablo Hemodialysis System for continuous renal replacement therapy (CRRT) treatment[.'*** which is not included in Tablo's indications for use.  The letter states that Tablo's clearance is limited to: <br><br> use in patients with acute and/or chronic renal failure, with or without ultrafiltration, in an acute or chronic care facility or in the home.  Treatments must be administered under a physician's prescription and observed by a trained individual who is considered competent in the use of the device.  Treatment types available include Intermittent Hemodialysis (IHD), Sustained Low Efficiency Dialysis (SLED/ SLEDD), Prolonged Intermittent Renal Replacement Therapy (PIRRT), and Isolated Ultrafiltration." |
| | | ¶ 58  "As an example of such off-label marketing, the FDA Warning Letter discusses certain materials from Outset's website, stating: <br><br> [M]aterials on your website state that two large hospitals converted to a program consisting solely of the Tablo Hemodialysis System and state, 'This major conversion eliminated the need for several types of dialysis machines for different clinical needs, including intermittent hemodialysis (IHD) in the dialysis unit and continuous renal replacement therapy (CRRT) in critical care.' <br><br> . . . <br><br> Other materials on your website state that multiple hospitals who had established CRRT treatment programs 'converted those CRRT programs over to Tablo with Extended Therapy' and states, 'They also replaced their CRRT machines with Tablo with XT...'" |
| | **c.** TabloCart is a medical device that requires FDA approval or clearance; | ¶ 55  "In fact, the FDA Warning Letter, which is addressed to Defendant Trigg, states that '[d]uring an inspection of your firm located at 3052 Orchard Drive in San Jose, CA on ***January 17, 2023 through February 10, 2023***, investigators from the United States Food and Drug Administration (FDA) determined that your firm is ***a medical device manufacturer of the Tablo Hemodialysis System and TabloCart with Prefiltration***.'  The letter further states that: |

*In re Outset Medical, Inc. Securities Litigation*, Case No. 5:24-cv-06124-EJD
**Exhibit A to Plaintiff's Corrected Appendix**

| PARAGRAPH | PARAGRAPH SUBPART | SUPPORTING ALLEGATIONS |
|---|---|---|
| | | Under section 201(h) of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. § 321(h), [both of] these products are devices because they are instruments, apparatuses, implements, machines, contrivances, implants, in vitro reagents, or other similar or related articles, including any component, part, or accessory, which are intended for use in the diagnosis of disease or other conditions or in the cure, mitigation, treatment, or prevention of disease, or to affect the structure or any function of the body." |
| | | ¶ 56  "Specifically, as to TabloCart, the FDA Warning Letter states that TabloCart was both *'adulterated'* and *'misbranded'* as it was being marketed and distributed without FDA clearance or premarket approval stating that Tablo is a water purification system for hemodialysis under 21 C.F.R. § 876.5665, a Class II medical device subject to premarket notification: A water purification system for hemodialysis is a device that is intended for use with a hemodialysis system and that is intended to remove organic and inorganic substances and microbial contaminants from water used to dilute dialysate concentrate to form dialysate.  This generic type of device may include a water softener, sediment filter, carbon filter, and water distillation system. TabloCart with Prefiltration appears to meet this definition because: - It is intended to be used with a Hemodialysis System - It is intended to remove organic and inorganic substances from water used to dilute dialysate concentrate to form dialysate… As noted above, *your firm is marketing this device without clearance or premarket approval.*" |
| | **d.** TabloCart was "adulterated" and "misbranded" under the FDCA because Outset failed to obtain 510(k) Clearance for the device; and | ¶ 53  "Beginning no later than January 17, 2023 and continuing through February 10, 2023, the FDA conducted an inspection at Outset's facility located in San Jose, California. Thereafter, and unknown to investors, Outset held at least one meeting with the FDA, on March 13, 2023, which included a discussion of Tablo's FDA clearance at which Defendant Trigg 'confirmed that CRRT is distinct from the cleared indications for use, device specifications, and treatment modalities for the Tablo.'  On July 5, 2023, the FDA sent its Warning Letter to Defendant Trigg, asserting that Tablo and TabloCart were misbranded and adulterated." |
| | | ¶ 54  "Then, on Friday, July 7, 2023, after the market closed, almost four months after Outset and the FDA had a call during which they discussed Tablo's lack of clearance for CRRT, Outset filed a |

*In re Outset Medical, Inc. Securities Litigation*, *Case No. 5:24-cv-06124-EJD*
**Exhibit A to Plaintiff's Corrected Appendix**

| PARAGRAPH | PARAGRAPH SUBPART | SUPPORTING ALLEGATIONS |
|---|---|---|
| | | Form 8-K disclosing that it had received the FDA Warning Letter.  Specifically, the Company stated the following and attempted to downplay the issues and their impact:<br><br>The first observation asserts that certain materials reviewed by the FDA and found on the Company's website promote continuous renal replacement therapy (CRRT), a modality outside of the current indications for the Tablo® Hemodialysis System.  The Company believes this concern has been effectively addressed through labeling and promotional changes already underway.<br><br>The second observation asserts that the TabloCart with Prefiltration (the 'TabloCart'), requires prior 510(k) clearance for marketing authorization.  TabloCart, an accessory to the Tablo System, launched in the third quarter of 2022 and sales to date have not been material to the Company's financial results.  The Company intends to work collaboratively with the FDA to resolve this observation, including potentially submitting a 510(k) on TabloCart."<br><br>¶ 56  "Specifically, as to TabloCart, the FDA Warning Letter states that TabloCart was both 'adulterated' and 'misbranded' as it was being marketed and distributed without FDA clearance or premarket approval stating that Tablo is a water purification system for hemodialysis under 21 C.F.R. § 876.5665, a Class II medical device subject to premarket notification:<br><br>A water purification system for hemodialysis is a device that is intended for use with a hemodialysis system and that is intended to remove organic and inorganic substances and microbial contaminants from water used to dilute dialysate concentrate to form dialysate.  This generic type of device may include a water softener, sediment filter, carbon filter, and water distillation system.<br><br>TabloCart with Prefiltration appears to meet this definition because:<br><br>- It is intended to be used with a Hemodialysis System<br>- It is intended to remove organic and inorganic substances from water used to dilute dialysate concentrate to form dialysate…<br><br>As noted above, ***your firm is marketing this device without clearance or premarket approval.***" |
| | **e.** Outset was "marketing [TabloCart] without clearance or premarket authorization." | ¶ 54  "Then, on Friday, July 7, 2023, after the market closed, almost four months after Outset and the FDA had a call during which they discussed Tablo's lack of clearance for CRRT, Outset filed a Form 8-K disclosing that it had received the FDA Warning Letter.  Specifically, the Company stated the following and attempted to downplay the issues and their impact: |

*In re Outset Medical, Inc. Securities Litigation*, *Case No. 5:24-cv-06124-EJD*
**Exhibit A to Plaintiff's Corrected Appendix**

| PARAGRAPH | PARAGRAPH SUBPART | SUPPORTING ALLEGATIONS |
|---|---|---|
| | | The first observation asserts that certain materials reviewed by the FDA and found on the Company's website promote continuous renal replacement therapy (CRRT), a modality outside of the current indications for the Tablo® Hemodialysis System. The Company believes this concern has been effectively addressed through labeling and promotional changes already underway. |
| | | The second observation asserts that the TabloCart with Prefiltration (the 'TabloCart'), requires prior 510(k) clearance for marketing authorization. TabloCart, an accessory to the Tablo System, launched in the third quarter of 2022 and sales to date have not been material to the Company's financial results. The Company intends to work collaboratively with the FDA to resolve this observation, including potentially submitting a 510(k) on TabloCart." |
| | | ¶ 56 "Specifically, as to TabloCart, the FDA Warning Letter states that TabloCart was both 'adulterated' and 'misbranded' as it was being marketed and distributed without FDA clearance or premarket approval stating that Tablo is a water purification system for hemodialysis under 21 C.F.R. § 876.5665, a Class II medical device subject to premarket notification: |
| | | A water purification system for hemodialysis is a device that is intended for use with a hemodialysis system and that is intended to remove organic and inorganic substances and microbial contaminants from water used to dilute dialysate concentrate to form dialysate. This generic type of device may include a water softener, sediment filter, carbon filter, and water distillation system. |
| | | TabloCart with Prefiltration appears to meet this definition because: |
| | | - It is intended to be used with a Hemodialysis System |
| | | - It is intended to remove organic and inorganic substances from water used to dilute dialysate concentrate to form dialysate… |
| | | As noted above, ***your firm is marketing this device without clearance or premarket approval.***" |
| ¶ [184 / 204 / 265]. The truth that Outset was engaged in widespread and pervasive off-label promotion is further evidenced by Outset's own disclosures: | **a.** The Company's August 2, 2023 disclosure that it had paused distribution of TabloCart while it sought FDA clearance and that it was lowering revenue | ¶ 210 "On August 2, 2023, after the market closed, the Company issued a press release and disclosed that due to the FDA Warning Letter and as the TabloCart had never received FDA clearance to be marketed, 'it ha[d] paused the shipment of TabloCart with Prefiltration, an accessory for the Tablo System, pending the Food and Drug Administration's clearance of a 510(k) the Company plans to submit later this month.' In the press release the Company also announced lowered expectations for FY 2023 telling investors that it 'now expects to be at the low end of [revenue guidance] as a result of the shipment pause.'" |

12

*In re Outset Medical, Inc. Securities Litigation*, *Case No. 5:24-cv-06124-EJD*
**Exhibit A to Plaintiff's Corrected Appendix**

| PARAGRAPH | PARAGRAPH SUBPART | SUPPORTING ALLEGATIONS |
|---|---|---|
| | expectations as a result of the FDA Warning Letter; | |
| | **b.** The Company's November 7, 2023 disclosure that it lowered revenue guidance due to the recent FDA Warning Letter and the pause in distribution of TabloCart; | **¶ 232** "On November 7, 2023, after the market closed, the Company issued a press release reporting revenue for the third quarter of $30.4 million and reiterating its revised full year 2023 guidance of approximately $130 million." <br><br> **¶ 233** "The Company held an earnings call the same day where Defendant Trigg also revealed initial 2024 guidance calling for mid-teens revenue growth versus consensus expectations of 17.8%." <br><br> **¶ 234** "Defendant Trigg attributed these results to the FDA Warning Letter while still misrepresenting and attempting to downplay the issues raised in the FDA Warning Letter and again blaming the results and low guidance on TabloCart not being available, stating that, 'competitive activity around TabloCart not being available by our choice and some competitive noise making around the other aspect of the warning letter around some case studies that were on our website. We feel that we have fully satisfied the FDA's concerns around the website.'" |
| | **c.** The Company's May 9, 2024 disclosure, just after it received clearance for TabloCart, that despite such clearance, it could still face fallout from the FDA Warning Letter despite the Company's previous representations that it had fully addressed the FDA's concerns, and that it expected sales to recover once TabloCart was cleared; and | **¶ 255** "On May 9, 2024, the Company filed with the SEC its Form 10-Q for the first quarter ('Q1 2024 Form 10-Q') signed by Defendants Trigg and Ahmed confirming the financial results reported in its May 8, 2024 press release." <br><br> **¶ 256** "The Q1 2024 Form 10-Q cautioned that, despite FDA clearance of TabloCart, the Company may still experience ongoing issues as a result of the FDA Warning Letter: <br><br> ***While we recently resumed distribution of TabloCart with Prefiltration following the FDA's clearance of our 510(k) submission, we may continue to experience disruptions as a result of the warning letter and our prior distribution pause on TabloCart with Prefiltration.*** <br><br> *** <br><br> Even as we resume distribution of TabloCart with Prefiltration following its FDA clearance, if we are unable to sufficiently recover from these disruptions and any reputational harm at the levels or on the timeframes we anticipate, we may experience further disruptions ***which could include adverse impacts on our backlog, our ability to expand customer relationships or attract new customers, as well as reduced demand for TabloCart and/or, potentially, Tablo***." |
| | **d.** The Company's August 7, 2024 disclosure that it | **¶ 267** "On August 7, 2024, after the market closed, Outset released its second quarter 2024 financial results, significantly missing consensus estimates and lowering its full year 2024 outlook by |

13

| PARAGRAPH | PARAGRAPH SUBPART | SUPPORTING ALLEGATIONS |
|---|---|---|
| | missed revenue expectations, lowered FY 2024 guidance, and sales had not recovered despite TabloCart's FDA clearance and Defendants' prior representations that lower Tablo sales were simply due to TabloCart's unavailability. | $39 million at the midpoint.  This is despite the fact that TabloCart now had FDA clearance during most of Q2 2023 and Tablo could now lawfully market and sell it.  The press release disclosed that the Company would be forced to take 'clear steps to improve our execution.'  Specifically, the press release reported, in relevant part:<br><br>*[N]ew console placements were below our expectations and will be lower than we originally forecasted for the year*.  We are taking clear steps to improve our execution and grow the business over the long term to bring the benefits of Tablo to even more providers and dialysis patients.<br><br>*\*\*\**<br><br>Second Quarter 2024 Financial Results<br><br>*Revenue for the second quarter was $27.4 million compared to $36.0 million in the second quarter of 2023, driven by a decline in product revenue to $19.2 million. . . . Outset now expects 2024 revenue to be approximately $110 million, revised from a prior range of $145 million to $153 million.*" |
| | ¶ 268 | "On that same date, the Company held its second quarter 2024 earnings conference call announcing the Company's financial results for the quarter.  During that earnings call, Defendant Trigg disclosed the Company would have to undergo 'sales team and process restructuring' and would be unable to deliver on a ramp of TabloCart as previously stated.  Specifically, during the earnings call, Defendant Trigg stated:<br><br>What we're experiencing is a temporary dislocation of converting the pipeline to revenue on our timeline due to the *changes in customer profile and process and the improvements needed in our own sales execution.*<br><br>*\*\*\**<br><br>We have also *restructured our sales organization and trained them on our new enterprise sales approach.*  Given the depth and breadth of the sales team and process restructuring, we expect it to take several quarters to fully implement and realize the many benefits that will come from it.  As we look ahead to the second half of the year, we now know it will not be possible to execute this transformation given the expected accompanying disruption while simultaneously delivering on the ramp we previously forecasted.  As a result, we expect the second half of 2024 will look similar to the first half with expected revenue for the year of approximately $110 million. |

| PARAGRAPH | PARAGRAPH SUBPART | SUPPORTING ALLEGATIONS |
|---|---|---|
| | | ***<br><br>While the return of TabloCart was helpful in advancing some of the acute deals in our pipeline, ***the ship hold masks what we now recognize, which is the need for commercial execution changes to better position ourselves to capitalize on enterprise opportunities that typically come with a longer sales cycle.***"<br><br>¶ 270  "In response, Defendant Trigg stated, '[w]e did expect more of the sort of the TabloCart occluded deals for lack of better term to advance and to close in the second quarter.  When they didn't, it really became pretty apparent that there probably was something more going on here.'" |