# EXHIBIT B

*In re Outset Medical, Inc. Securities Litigation, Case No. 5:24-cv-06124-EJD*
**Exhibit B to Plaintiff's Corrected Appendix**

| PARAGRAPH | PARAGRAPH SUBPART | SUPPORTING ALLEGATIONS |
|---|---|---|
| **266.** The truth that the findings in the FDA Warning Letter and Outset's off-label marketing, as well as their impact on the Company and its sales and marketing practices, were much more significant than Defendants relayed is evidenced by the following: | **a.** Statements from Witnesses 2 and 3 that at an all-hands meeting after the FDA issued the FDA Warning Letter, Outset management began instructing sales personnel to stop promoting Tablo for use for CRRT; | ¶ 71  "Witness 2 said that, after receiving the FDA Warning Letter, Outset sent out a companywide email and an all-hands call was conducted instructing everyone to stop referring to CRRT while marketing Tablo.  Witness 2 was on the all-hands call which was led by several members of Outset's management group, including Jen Buchan Sipe, former Senior Director, Marketing, and Jennifer Schuler, former Senior Director of Product Management.  Witness 2 said the instruction from Outset management was to stop using the term CRRT when selling and marketing Tablo.  The staff was also instructed to purge all prior marketing materials, both hard copy and electronic, that existed prior to the FDA Warning Letter.  Witness 2 does not recall any instance during the all-hands call when Outset management stated, or even inferred, the FDA Warning Letter was wrong or inaccurate concerning Tablo and CRRT." <br><br> ¶ 77  "Witness 3 said that it was not until after the FDA Warning Letter that Outset began training personnel on what could not be represented to customers about the Tablo, including about CRRT.  Consistent with Witness 2's account, Witness 3 relayed that, shortly after the FDA Warning Letter, a meeting was held in which attendees were told not to use the term CRRT." |
|  | **b.** Statements from Witness 2 that at the same all-hands meeting, and in a companywide email, Outset management instructed employees to purge any marketing materials that existed prior to the FDA Warning Letter; | ¶ 71  "Witness 2 said that, after receiving the FDA Warning Letter, Outset sent out a companywide email and an all-hands call was conducted instructing everyone to stop referring to CRRT while marketing Tablo.  Witness 2 was on the all-hands call which was led by several members of Outset's management group, including Jen Buchan Sipe, former Senior Director, Marketing, and Jennifer Schuler, former Senior Director of Product Management.  Witness 2 said the instruction from Outset management was to stop using the term CRRT when selling and marketing Tablo.  The staff was also instructed to purge all prior marketing materials, both hard copy and electronic, that existed prior to the FDA Warning Letter." |
|  | **c.** The findings in the July 5, 2023 FDA Warning Letter, which followed an inspection of Outset's facilities and website and discussion with Outset management, which found Outset was engaged in off-label marketing and cited to the marketing materials on the website only as an | ¶ 53  "Beginning no later than January 17, 2023 and continuing through February 10, 2023, the FDA conducted an inspection at Outset's facility located in San Jose, California. Thereafter, and unknown to investors, Outset held at least one meeting with the FDA, on March 13, 2023, which included a discussion of Tablo's FDA clearance at which Defendant Trigg 'confirmed that CRRT is distinct from the cleared indications for use, device specifications, and treatment modalities for the Tablo.'  On July 5, 2023, the FDA sent its Warning Letter to Defendant Trigg, asserting that Tablo and TabloCart were misbranded and adulterated." |

1

*In re Outset Medical, Inc. Securities Litigation, Case No. 5:24-cv-06124-EJD*
**Exhibit B to Plaintiff's Corrected Appendix**

| | |
|---|---|
| example and which highlighted the "serious public health concerns" the off-label marketing implicated; | ¶ 54 "Then, on Friday, July 7, 2023, after the market closed, almost four months after Outset and the FDA had a call during which they discussed Tablo's lack of clearance for CRRT, Outset filed a Form 8-K disclosing that it had received the FDA Warning Letter. Specifically, the Company stated the following and attempted to downplay the issues and their impact: |

¶ 54 (continued):

> The first observation asserts that certain materials reviewed by the FDA and found on the Company's website promote continuous renal replacement therapy (CRRT), a modality outside of the current indications for the Tablo® Hemodialysis System. The Company believes this concern has been effectively addressed through labeling and promotional changes already underway.
>
> The second observation asserts that the TabloCart with Prefiltration (the 'TabloCart'), requires prior 510(k) clearance for marketing authorization. TabloCart, an accessory to the Tablo System, launched in the third quarter of 2022 and sales to date have not been material to the Company's financial results. The Company intends to work collaboratively with the FDA to resolve this observation, including potentially submitting a 510(k) on TabloCart."

¶ 55 "In fact, the FDA Warning Letter, which is addressed to Defendant Trigg, states that '[d]uring an inspection of your firm located at 3052 Orchard Drive in San Jose, CA on January 17, 2023 through February 10, 2023, investigators from the United States Food and Drug Administration (FDA) determined that your firm is a medical device manufacturer of the Tablo Hemodialysis System and TabloCart with Prefiltration.' The letter further states that:

> Under section 201(h) of the Federal Food, Drug, and Cosmetic Act (the Act), 21 U.S.C. § 321(h), [both of] these products are devices because they are instruments, apparatuses, implements, machines, contrivances, implants, in vitro reagents, or other similar or related articles, including any component, part, or accessory, which are intended for use in the diagnosis of disease or other conditions or in the cure, mitigation, treatment, or prevention of disease, or to affect the structure or any function of the body."

¶ 56 "Specifically, as to TabloCart, the FDA Warning Letter states that TabloCart was both 'adulterated' and 'misbranded' as it was being marketed and distributed without FDA clearance or premarket approval stating that Tablo is a water purification system for hemodialysis under 21 C.F.R. § 876.5665, a Class II medical device subject to premarket notification:

> A water purification system for hemodialysis is a device that is intended for use with a hemodialysis system and that is intended to remove organic and inorganic

2

*In re Outset Medical, Inc. Securities Litigation, Case No. 5:24-cv-06124-EJD*
**Exhibit B to Plaintiff's Corrected Appendix**

|  |  | substances and microbial contaminants from water used to dilute dialysate concentrate to form dialysate.  This generic type of device may include a water softener, sediment filter, carbon filter, and water distillation system. |
|---|---|---|

TabloCart with Prefiltration appears to meet this definition because:

- It is intended to be used with a Hemodialysis System
- It is intended to remove organic and inorganic substances from water used to dilute dialysate concentrate to form dialysate…

As noted above, ***your firm is marketing this device without clearance or premarket approval.***"

**¶ 57** "As to Tablo, the FDA Warning Letter states that Tablo was both 'misbranded' and 'adulterated' because ***'evidence reviewed at the [January 17, 2023 through February 10, 2023] inspection and marketing materials found on [Outset's] website [www.outsetmedical.com] on May 11, 2023 show promotion of the Tablo Hemodialysis System for continuous renal replacement therapy (CRRT) treatment[.]'*** which is not included in Tablo's indications for use.  The letter states that Tablo's clearance is limited to:

use in patients with acute and/or chronic renal failure, with or without ultrafiltration, in an acute or chronic care facility or in the home.  Treatments must be administered under a physician's prescription and observed by a trained individual who is considered competent in the use of the device.  Treatment types available include Intermittent Hemodialysis (IHD), Sustained Low Efficiency Dialysis (SLED/ SLEDD), Prolonged Intermittent Renal Replacement Therapy (PIRRT), and Isolated Ultrafiltration."

**¶ 58** "As an example of such off-label marketing, the FDA Warning Letter discusses certain materials from Outset's website, stating:

[M]aterials on your website state that two large hospitals converted to a program consisting solely of the Tablo Hemodialysis System and state, 'This major conversion eliminated the need for several types of dialysis machines for different clinical needs, including intermittent hemodialysis (IHD) in the dialysis unit and continuous renal replacement therapy (CRRT) in critical care.'

 . . .

Other materials on your website state that multiple hospitals who had established CRRT treatment programs 'converted those CRRT programs over to Tablo with

3

*In re Outset Medical, Inc. Securities Litigation, Case No. 5:24-cv-06124-EJD*
**Exhibit B to Plaintiff's Corrected Appendix**

| | | |
|---|---|---|
| | | Extended Therapy' and states, 'They also replaced their CRRT machines with Tablo with XT...'" |
| | | **¶ 59** "The FDA Warning Letter to Defendant Trigg also states that '*you confirmed that CRRT is distinct from the cleared indications for use, device specifications, and treatment modalities for the Tablo*,' citing to both meeting minutes and presentation slides from a *March 13, 2023* teleconference between Outset and the FDA and statements in Outset's 510(k) submission for Tablo." |
| | | **¶ 60** "In the FDA Warning Letter, the FDA also emphasizes *the serious health and safety risks* that Outset's off-label marketing raised: |
| | | Patients who require CRRT are typically hospitalized with acute illness resulting in acute kidney injury and possible severe hemodynamic instability, and the ***devices that provide CRRT treatment have unique features*** to enable continuous treatment (> 24 hours) for this patient population. |
| | | ***Systems that cannot safely and reliably perform CRRT raise serious public health concerns when used for CRRT treatment, because failure of dialysis systems performing CRRT may result in fluid and electrolyte imbalances, inadequate ultrafiltration, infection, and patient harm/death***. |
| | | This change represents a significant modification outside the scope of the K223248 clearance that ***could significantly affect safety or effectiveness,*** resulting in a new device such that a separate, additional 510(k) premarket notification must be submitted [see 21 CFR 807.81(a)(3)(i)]. ***Thus, the sale of the Tablo Hemodialysis System for CRRT is unlawful.***" |
| | **d.** Outset rebranded the Tablo XT upgrade to Tablo Pro+ right after receiving the FDA Warning Letter without explanation; | **¶ 44** "Since the third quarter of 2020, Tablo has offered an optional software upgrade called Tablo XT allowing Tablo to run for up to 24 hours at a lower dialysate flow rate. In the second half of 2023, after the FDA issued its Warning Letter, Outset rebranded the Tablo XT upgrade to Tablo Pro+." |
| | | **¶ 72** "Witness 2 further relayed that following the all-hands call, Tablo XT, or Extended Therapy, was rebranded as Tablo Pro+." |
| | | **¶ 213** "After Outset received the FDA Warning Letter, it rebranded 'Tablo XT' to 'Tablo Pro+.' During the earnings call, the Company began referring to the software as Tablo Pro+. Moreover, Defendant Ahmed touted Pro+ as being in the 'substantial majority of our acute consoles' for the prior quarter." |

| | | |
|---|---|---|
| | **e.** Likewise, Outset added the following disclosure to its website and marketing materials: "The Tablo Hemodialysis System is not indicated for continuous renal replacement therapy (CRRT) and is cleared for use for up to 24 hour" after receiving the FDA Warning Letter; | **¶ 96** "Moreover, after being forced to disclose that it received the FDA Warning Letter, Outset added the following disclosure to its website and marketing materials: 'The Tablo Hemodialysis System is not indicated for continuous renal replacement therapy (CRRT) and is cleared for use for up to 24 hours.'" |
| | **f.** The Company's May 9, 2024 disclosure that despite the FDA's clearance of TabloCart, it could still face fallout from the FDA Warning Letter despite the Company's previous representations that it had fully addressed the FDA's concerns, and that it expected sales to recover once TabloCart was cleared; and | **¶ 255** "On May 9, 2024, the Company filed with the SEC its Form 10-Q for the first quarter ('Q1 2024 Form 10-Q') signed by Defendants Trigg and Ahmed confirming the financial results reported in its May 8, 2024 press release." <br><br> **¶ 256** "The Q1 2024 Form 10-Q cautioned that, despite FDA clearance of TabloCart, the Company may still experience ongoing issues as a result of the FDA Warning Letter: <br><br> *While we recently resumed distribution of TabloCart with Prefiltration following the FDA's clearance of our 510(k) submission, we may continue to experience disruptions as a result of the warning letter and our prior distribution pause on TabloCart with Prefiltration.*" <br><br> *** <br><br> Even as we resume distribution of TabloCart with Prefiltration following its FDA clearance, if we are unable to sufficiently recover from these disruptions and any reputational harm at the levels or on the timeframes we anticipate, we may experience further disruptions *which could include adverse impacts on our backlog, our ability to expand customer relationships or attract new customers, as well as reduced demand for TabloCart and/or, potentially, Tablo.* |
| | **g.** The Company's August 7, 2024 disclosure that it missed revenue expectations, was lowering FY 2024 guidance, and sales had not recovered despite TabloCart's FDA clearance on May 6, 2024, and its prior representations that lower Tablo sales were simply due to TabloCart's unavailability. | **¶ 267** "On August 7, 2024, after the market closed, Outset released its second quarter 2024 financial results, significantly missing consensus estimates and lowering its full year 2024 outlook by $39 million at the midpoint.  This is despite the fact that TabloCart now had FDA clearance during most of Q2 2023 and Tablo could now lawfully market and sell it.  The press release disclosed that the Company would be forced to take "clear steps to improve our execution." Specifically, the press release reported, in relevant part: <br><br> *[N]ew console placements were below our expectations and will be lower than we originally forecasted for the year*.  We are taking clear steps to improve our |

*In re Outset Medical, Inc. Securities Litigation, Case No. 5:24-cv-06124-EJD*
**Exhibit B to Plaintiff's Corrected Appendix**

execution and grow the business over the long term to bring the benefits of Tablo to even more providers and dialysis patients.

\*\*\*

Second Quarter 2024 Financial Results

***Revenue for the second quarter was $27.4 million compared to $36.0 million in the second quarter of 2023, driven by a decline in product revenue to $19.2 million.***

\*\*\*

Full Year 2024 Financial Guidance

***Outset now expects 2024 revenue to be approximately $110 million, revised from a prior range of $145 million to $153 million.***"

¶ 268  "On that same date, the Company held its second quarter 2024 earnings conference call announcing the Company's financial results for the quarter.  During that earnings call, Defendant Trigg disclosed the Company would have to undergo 'sales team and process restructuring' and would be unable to deliver on a ramp of TabloCart as previously stated." Specifically, during the earnings call, Defendant Trigg stated:

What we're experiencing is a temporary dislocation of converting the pipeline to revenue on our timeline due to the changes in customer profile and process and the improvements needed in our own sales execution.

\*\*\*

We have also restructured our sales organization and trained them on our new enterprise sales approach.  Given the depth and breadth of the sales team and process restructuring, we expect it to take several quarters to fully implement and realize the many benefits that will come from it.  As we look ahead to the second half of the year, we now know it will not be possible to execute this transformation given the expected accompanying disruption while simultaneously delivering on the ramp we previously forecasted.  As a result, we expect the second half of 2024 will look similar to the first half with expected revenue for the year of approximately $110 million.

\*\*\*

While the return of TabloCart was helpful in advancing some of the acute deals in our pipeline, the ship hold masks what we now recognize, which is the need

6

| | | |
|---|---|---|
| | | for commercial execution changes to better position ourselves to capitalize on enterprise opportunities that typically come with a longer sales cycle.<br><br>¶ 270 "In response, Defendant Trigg stated, '[w]e did expect more of the sort of the TabloCart occluded deals for lack of better term to advance and to close in the second quarter. When they didn't, it really became pretty apparent that there probably was something more going on here.'" |